No. 25-1684

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

NORRIS G. HOLDER, JR.,                    Petitioner-Appellant

v.

UNITED STATES OF AMERICA and
STEVEN MERENDINO                          Respondent-Appellees

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:23-cv-00524-MPB-MKK, Hon. Matthew P. Brookman

## MEMORANDUM OF APPELLANT

LISA G. PETERS
FEDERAL DEFENDER

Eliza Meredith
Assistant Federal Defender
Federal Public Defender's Office
1401 W. Capitol Ave., Suite 490
Little Rock, Arkansas 72201
(501) 324-6114

*Counsel for Petitioner-Appellant*

# TABLE OF CONTENTS

TABLES OF AUTHORITIES..................................................................ii

INTRODUCTION..............................................................................1

STATEMENT OF THE CASE ...........................................................5

ARGUMENT ...................................................................................10

   I.   This Court has jurisdiction to hear this appeal............................10

      A.   *Jones* does not prevent Mr. Holder from seeking relief
          under 28 U.S.C. § 2241. ...................................................10

      B.   Section 2241 must be available for a federal prisoner to
          assert a challenge to the sentencing court's subject
          matter jurisdiction when § 2255 is not. ...........................13

  II.  The commutation of Mr. Holder's death sentences does not
      moot this appeal. ........................................................................15

      A.   Mr. Holder challenges the trial court's jurisdiction
          to conduct a capital trial in the first instance. .................15

      B.   Mr. Holder remains condemned to harsh and excessive
          conditions of confinement because of the
          unconstitutionally obtained death sentences. ...................18

CONCLUSION .................................................................................23

# TABLES OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Apprendi v. New Jersey,*
   530 U.S. 466 (2000) ................................................................7

*Arbaugh v. Y&H Corp.,*
   546 U.S. 500 (2006) ..............................................................14

*Brown v. Davenport,*
   142 S. Ct. 1510 (2022) ......................................................3, 12

*Dennis v. Terris,*
   927 F.3d 955 (6th Cir. 2019) ................................................9

*Dunn v. Reeves,*
   594 U.S. 731 (2021) ..............................................................16

*Ex Parte Siebold,*
   100 U.S. 371 (1880) ..........................................................3, 12

*Gonzalez v. Thaler,*
   565 U.S. 134 (2012) ..............................................................14

*Harrington v. Richter,*
   562 U.S. 86 (2011) ................................................................16

*Holder v. United States,*
   136 S. Ct. 34 (2015) ..............................................................8

*Holder v. United States,*
   539 U.S. 916 (2003) ............................................................6, 7

*Holder v. United States,*
   721 F.3d 979 (8th Cir. 2013) .............................................6, 7

*Holder v. United States,*
   2008 WL 2909648 (E.D. Mo. Jul. 22, 2008) .........................7

*In re Davenport,*
   147 F.3d 605 (7th Cir. 1998) ...............................................12

*Jones v. Hendrix,*
   599 U.S. 465 (2023) ........................................................*passim*

| **Cases** | **Page(s)** |

*Lockhart v. McCree,*
476 U.S. 162 (1986) ...............................................................17

*McIntosh v. United States,*
601 U.S. 330 (2024) ...............................................................15

*Ring v. Arizona,*
536 U.S. 584 (2002) .................................................................7

*Taylor et al. v. Trump et al.,*
Case No. 1:25-cv-01161-TJK (D.D.C. April 16, 2025) .........20

*U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.,*
487 U.S. 72 (1988) .................................................................14

*United States v. Allen,*
247 F.3d 741 (8th Cir. 2001) ...............................................5, 6

*United States v. Allen,*
357 F.3d 745 (8th Cir. 2004) ...................................................6

*United States v. Allen,*
406 F.3d 940 (8th Cir. 2005) ...........................................6, 7, 8

*United States v. Allen,*
536 U.S. 953 (2002) .................................................................6


**Statutes, Rules, and Constitutional Provisions**

18 U.S.C. § 3591 .........................................................................2

18 U.S.C. § 3592 .........................................................................2

18 U.S.C. § 924 ...........................................................................5

18 U.S.C. § 2113 .........................................................................5

28 U.S.C. § 2241 ................................................................*passim*

28 U.S.C. § 2255 ................................................................*passim*

Fed. R. App. P. 32(a)(5) .............................................................1

Fed. R. App. P. 32(a)(6) .............................................................1

Fed. R. Crim P. 7(a)(1)(A) .........................................................2

U.S. Const., amend. V ................................................................2

**Other Authorities**                                                           **Page(s)**

American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, Guideline, 31 HOFSTRA L. REV. 913 (2003).......................................................16

Judith D. Levinson, et al., *Devaluing Death: An Empirical Study of Implicit Racial Bias on Jury-Eligible Citizens in Six Death Penalty States*, 89 N.Y.U. L. REV. 513 (2014)..................................................17

William J. Bowers, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings*, 70 IND. L. J. 1043 (1995)..........................17

Off. of the Inspector Gen., U.S. Dep't of Just., *Audit of the Federal Bureau of Prisons' Management of the National Gang Unit* (2024)....22

Off. of the Att'y Gen., *Memorandum for All Department of Justice Employees: Restoring a Measure of Justice to the Families of Victims of Commuted Murderers* (Feb. 5, 2025)...................................23

Restoring the Death Penalty and Protecting Public Safety, Exec. Order No. 14164, 90 Fed. Reg. 8,463 (Jan. 20, 2025) ................23

Appellant Norris G. Holder Jr. brings this appeal from the district court's order and judgment denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("§ 2241 petition"). This Court directed Mr. Holder to file a memorandum explaining why the district court's judgment should not be summarily affirmed and addressing what effect, if any, the commutation of his death sentences has on this appeal. Mr. Holder addresses those issues below and respectfully requests full briefing on the merits of his case and consideration of this appeal in the ordinary course.

**INTRODUCTION**

For nearly three decades, Mr. Holder has been unlawfully imprisoned on federal death row as a result of having been tried, convicted, and sentenced on capital offenses for which he was never indicted and by a court that lacked subject matter jurisdiction to preside over a capital case. The absence of jurisdiction for the trial court to conduct a capital trial or sentencing proceeding stems from the government's failure to secure a grand jury indictment that included two essential components of a federal capital charge: an intent factor and a statutory aggravating circumstance.

1

The Fifth Amendment commands, in no uncertain terms, that a capital prosecution can only proceed by indictment. *See* U.S. Const., amend. V. ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury."); *see also* Fed. R. Crim P. 7(a)(1)(A) ("An offense . . . must be prosecuted by an indictment if it is punishable by death."). The indictment against Mr. Holder alleged neither an aggravating circumstance nor an intent factor required to charge a capital offense under 18 U.S.C. § 3591(a)(2), 18 U.S.C. § 3592(c), and the Fifth Amendment's Indictment Clause. The indictment therefore failed to confer jurisdiction on the trial court to conduct a capital proceeding against Mr. Holder, and his convictions and death sentences are therefore void.

28 U.S.C. § 2241 is the appropriate mechanism to challenge the trial court's jurisdiction to convict and sentence Mr. Holder in a capital case where the indictment did not present a capital charge. The history and tradition of American jurisprudence make clear that a district court's lack of jurisdiction is the kind of fundamental defect that the writ of habeas corpus is designed to remedy.

The Supreme Court's decision in *Jones v. Hendrix*, 599 U.S. 465 (2023), does not mandate a contrary result. *Jones* does not eliminate § 2255(e)'s "savings clause" altogether, nor does it alter the traditional understanding of habeas corpus as a remedy to challenge the trial court's jurisdiction. *Jones*, 599 U.S. at 469–81; *see also id.* at 483–85 (citing *Brown v. Davenport*, 142 S. Ct. 1510 (2022) and *Ex Parte Siebold*, 100 U.S. 371 (1880)).

Mr. Holder has been enduring the consequences of this constitutional error for more than 28 years, which he has spent in severely isolating and solitary conditions. He has been prevented from holding jobs or having physical-contact visits with his family and friends and is restricted to his single cell except for the few hours each week he can recreate in an even smaller cell outside.

President Biden's commutation of Mr. Holder's death sentences prevented an unconstitutional execution, but it did not end the continued harms Mr. Holder faces as a result of the invalid capital conviction and commuted death sentences, and therefore does not moot this appeal. Mr. Holder remains incarcerated and is now serving a life sentence for a charge on which he was never indicted. Moreover, as a

direct result of his now-commuted death sentence, Mr. Holder has been subjected to express retaliation by the current President. He remains on federal death row pending resolution of a lawsuit challenging the government's effort to transfer him to the federal Supermax prison, ADX-Florence, under conditions even worse than death row, which President Trump directed solely based on President Biden's commutation of Mr. Holder's invalid death sentence. Notably, before January 20, 2025, the Bureau of Prisons had recommended that Mr. Holder be placed in its Life Connections program, a therapeutic, faith-based transitional program open only to prisoners with good institutional records and a demonstrated commitment to hard work and positive rehabilitation.

Had Mr. Holder been prosecuted for the non-capital offenses for which he was indicted and thus sentenced to life imprisonment or a term of years at the time of his trial, he would not have spent 28 years facing a possible execution and would not be subject to retaliatory housing in an underground bunker of a prison designed to incapacitate the nation's most dangerous criminals. This Court should allow Mr.

4

Holder's appeal to move forward with full briefing and argument on its merits.

STATEMENT OF THE CASE

In 1997, a federal grand jury in the Eastern District of Missouri returned an indictment charging Mr. Holder and Billie Jerome Allen with one count of bank robbery resulting in death in violation of 18 U.S.C. §§ 2113(a) and (e), and one count of carrying a firearm during a crime of violence resulting in death in violation of 18 U.S.C. §§ 924(c) and (j). The indictment did not allege any aggravating circumstances or intent factors. The government, nonetheless, filed a notice of intent to seek the death penalty. A death-qualified jury convicted and sentenced Mr. Holder to death on both counts. *United States v. Holder*, Case No. 4:97-cr-141-ERW-1, ECF No. 458 (E.D. Mo. July 23, 1998).

On direct appeal, a divided panel of the Eighth Circuit issued a single decision affirming Mr. Holder's and Mr. Allen's convictions and death sentences. *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001). Judge Richard S. Arnold dissented and would have vacated Mr. Holder's death sentences on the ground that the jury should have been required to find that Mr. Holder had a specific intent to aid and abet the

killing of security guard Richard Heflin, which the evidence did not prove. *Allen,* 247 F.3d at 979–98 (Arnold, J., dissenting).[1] The Supreme Court denied certiorari. *Holder v. United States*, 539 U.S. 916 (2003).

Codefendant Allen also petitioned the Supreme Court for certiorari, challenging the government's failure to charge aggravating factors in the indictment. The Supreme Court summarily remanded the case, *Allen v. United States*, 536 U.S. 953, 956 (2002), and an Eighth Circuit panel granted relief. *United States v. Allen*, 357 F.3d 745 (8th Cir. 2004). The Eighth Circuit took the case *en banc* and, while agreeing that the indictment was defective under the Fifth Amendment, concluded that the error was harmless beyond a reasonable doubt. *United States v. Allen*, 406 F.3d 940, 949 (8th Cir. 2005). The Eighth Circuit reached this harmless-error determination by speculating that the grand jury would have indicted Mr. Allen on statutory aggravating factors if it had been asked to do so. *Id.* at 947–49.

---

[1] The Eighth Circuit majority described the "overwhelming" evidence that it was Mr. Allen who killed Mr. Heflin. *Allen,* 247 F.3d at 777. *See also Holder v. United States*, 721 F.3d 979 (8th Cir. 2013) ("Evidence presented at trial showed that Allen was the first man to enter the Bank and that he began shooting his rifle immediately, killing security guard Richard Heflin.").

Mr. Holder filed a 28 U.S.C. § 2255 motion to vacate his conviction and sentence in which he raised claim pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Ring v. Arizona*, 536 U.S. 584 (2002), arguing that the indictment failed to allege a statutory aggravating factor in violation of the Fifth Amendment's Indictment Clause. *Holder v. United States*, No. 4:03-cv-923-ERW, ECF No. 13 at 3–4, 28–29 (E.D. Mo. June 8, 2004). The district court denied relief. *Holder v. United States,* 2008 WL 2909648 (E.D. Mo. Jul. 22, 2008).

On appeal, the Eighth Circuit relied on the *en banc* decision in Mr. Allen's case, holding "that it is error not to charge the aggravating factors for capital punishment in the indictment, but that the error is not structural and is thus subject to harmless-error analysis." *Holder v. United States*, 721 F.3d 979, 999 (8th Cir. 2014) (citing *Allen*, 406 F.3d at 943). Ignoring the significant difference between the evidence of Mr. Holder's role in the crime and that of Mr. Allen's role, the Eighth Circuit explained:

> For at least the reason that the same grand jury that returned Allen's indictment also returned Holder's indictment based on the same evidence and for the same charges, "we see no realistic possibility that [Holder's] grand jury would have declined to charge a statutory aggravating factor or the mens

rea requirement in order to avoid exposing [Holder] to the death penalty."

*Id.* (quoting *Allen*, 406 F.3d at 949). The Supreme Court denied certiorari. *Holder v. United States*, 136 S. Ct. 34 (2015).

On November 14, 2023, Mr. Holder filed a § 2241 petition in the Southern District of Indiana. *Holder v. United States of America et al*, Case No. 2:23-cv-00524-MPB-MKK, ECF No. 1. Mr. Holder alleged in his petition that he was never indicted for a capital crime, and therefore the district court lacked subject matter jurisdiction to conduct a trial or impose a death sentence. The government moved to dismiss Mr. Holder's § 2241 petition for lack of jurisdiction under *Jones*. ECF No. 15. Mr. Holder argued in opposition that the holding in *Jones*, which otherwise curtailed § 2241 relief in ordinary cases, does not apply to his particular jurisdictional challenge. ECF. No. 23.

On December 23, 2024, President Joseph R. Biden, Jr., commuted the death sentences of 37 individuals on federal death row, including Mr. Holder, "to sentences of life imprisonment without the possibility of parole, leaving intact and in effect for

8

each named personal all other conditions and components of the sentences previously imposed upon them."[2]

On February 19, 2025, the district court granted the government's motion to dismiss and dismissed Mr. Holder's § 2241 petition for lack of jurisdiction. ECF No. 24. Without soliciting argument from the parties, the district court noted that "[n]either party filed anything regarding the commutation in this action." *Id.* at 4 n.1. Because Mr. Holder challenges both his conviction and sentence, the district court "assume[d] for purposes of the petition and motion to dismiss that the[] proceedings have not been rendered moot by the commutation." *Id.* (citing *Dennis v. Terris*, 927 F.3d 955 (6th Cir. 2019) (presidential commutation did not render habeas action moot where success on habeas could reduce sentence)). This timely appeal followed.

---

[2] December 23, 2024, Executive Grant of Clemency, https://www.justice.gov/pardon/media/1382291/dl?inline

# ARGUMENT

## I. This Court has jurisdiction to hear this appeal.

### A. *Jones* does not prevent Mr. Holder from seeking relief under 28 U.S.C. § 2241.

The district court, relying on the Supreme Court's decision in *Jones v. Hendrix*, 599 U.S. 465 (2023), dismissed Mr. Holder's habeas petition for lack of jurisdiction. To the extent this Court's briefing order desires to examine the merits, this Court should not summarily affirm. The district court misread *Jones* far beyond its actual holding. Whether *Jones* can be extended to deny jurisdiction in Mr. Holder's case presents important and novel constitutional questions never addressed in *Jones*. These questions are worthy of full briefing and review.

In 1948, Congress passed 28 U.S.C. § 2255, Pub. L. No. 80-773, 62 Stat. 869, 967, creating a motions-based mechanism for federal prisoners to seek post-conviction relief. Section 2255 was designed to relieve the burden of handling habeas corpus petitions that was then borne by the relatively small number of district courts in jurisdictions where federal prisons were located.

In contrast to the traditional habeas corpus provision of § 2241, which requires federal prisoners to file in the district where they are

10

physically located, § 2255 situated the proceedings in the district of conviction. *See* 28 U.S.C. § 2255(a) (requiring federal prisoners to file motion in "the court which imposed the sentence"). The statute also included a provision, known as the savings clause, stating:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

In *Jones*, the Supreme Court resolved a longstanding conflict among the circuits, holding that the savings clause does not apply to a federal prisoner who seeks to raise a *statutory-interpretation* claim that was not available at the time of his initial § 2255 litigation. 599 U.S. at 471. *Jones* held that the savings clause does not permit a prisoner to pursue relief under § 2241 in such circumstances. *Id.* at 477–78 (abrogating this Court's rule from *In re Davenport*, 147 F.3d 605 (7th Cir. 1998)).

But *Jones* did not eliminate the savings clause altogether, nor did it alter the traditional understanding of habeas corpus as

a remedy to challenge a trial court's jurisdiction. *Id.* at 469–81; *see also id.* at 483–85 (citing *Brown v. Davenport*, 142 S. Ct. 1510 (2022) and *Ex Parte Siebold*, 100 U.S. 371 (1880)). Rather, *Jones* states that petitioners may continue to avail themselves of the savings clause and file habeas petitions under § 2241 "in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing court, as well as for challenges to detention other than collateral attacks on a sentence." *Id.* at 478. Claims cognizable under § 2241 include those alleging, for example, that the petitioner "is being detained in a place or manner not authorized by the sentence, that he has unlawfully been denied parole or good-time credits, or that an administrative sanction affecting the conditions of his detention is illegal." *Id.*

Mr. Holder presents a jurisdictional challenge that falls neatly within the exceptions outlined in *Jones* and within the traditional home of habeas corpus. That particular circumstance of Mr. Holder's petition makes it meritorious and not appropriate for summary affirmance.

**B.**  **Section 2241 must be available for a federal prisoner to assert a challenge to the sentencing court's subject matter jurisdiction when § 2255 is not.**

*Jones* recognized that § 2255's saving clause is still available—allowing recourse under § 2241—in the highly unusual circumstances where it is impossible for a prisoner to seek relief under § 2255. 599 U.S. at 478. The claim Mr. Holder advances fits squarely within these parameters: he spent nearly three decades facing potential execution and remains condemned to harsh and excessive conditions of confinement because of unconstitutionally obtained death sentences imposed by a court that lacked jurisdiction to conduct a capital trial. Were Mr. Holder to attempt to proceed under § 2255, he would be returning to the court of conviction—the very court that lacked jurisdiction over his case from its outset. And his challenge, which goes to the heart of his confinement—first on death row and now as a death-row commutee—is to the execution of his sentence and thus properly brought under § 2241. These are the circumstances that *Jones* acknowledged may satisfy the savings clause and allow a prisoner to proceed under § 2241.

It is well settled that a court's lack of subject matter jurisdiction may be raised at any time. *See, e.g.*, *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation[.]"); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). *Cf. U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 77 (1988) ("The distinction between subject-matter jurisdiction and waivable defenses is not a mere nicety of legal metaphysics. It rests instead on the central principle of a free society that courts have finite bounds of authority[.]"). A prisoner who cannot challenge the sentencing court's subject matter jurisdiction in § 2255 must be allowed to do so under some provision. Because jurisdictional defects are not forfeitable, they are properly cognizable under § 2241.

Mr. Holder's § 2241 petition explained how these principles fit together in his case. The trial court lacked jurisdiction to conduct a capital proceeding because the indictment failed to include statutory aggravators or intent factors. Mr. Holder should be able to assert his jurisdictional challenge under § 2255(a) at any time. But he cannot, because § 2255(h) bars him from filing a second motion under that

statute except under limited circumstances that do not include a jurisdictional challenge. *Jones* recognizes this situation as presenting extraordinary circumstances under which the remedy by motion is, in fact, inadequate or ineffective to test the legality of Mr. Holder's convictions and death sentences. *See Jones*, 599 U.S. at 474–77.

Whether § 2241 must be available for a federal prisoner to assert a challenge to the sentencing court's subject-matter jurisdiction is a question worthy of full briefing and review.

## II. The commutation of Mr. Holder's death sentences does not moot this appeal.

### A. Mr. Holder challenges the trial court's jurisdiction to conduct a capital trial in the first instance.

In the absence of jurisdiction, a court "is completely powerless to take any relevant action." *McIntosh v. United States*, 601 U.S. 330 (2024). Because Mr. Holder was not indicted for a capital crime, the trial court was powerless to preside over a capital proceeding or to impose a death sentence. A capital charge impacts every aspect of trial and defense strategy and the commutation of Mr. Holder's death sentences does not abate the irreparable harm he continues to suffer therefrom.

The entire structure of Mr. Holder's trial was impacted by the invalid capital charge. From conducting voir dire to produce a death-qualified jury, to the development of trial strategy, to the allocation of limited recourses to the penalty phase of trial, the extraordinary nature of the potential punishment imposes unique and extraordinary demands on capital defense counsel from the very outset of the case. *See generally* American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, Guideline 1.1 & cmt., 31 HOFSTRA L. REV. 913, 923 (2003). *Cf. Dunn v. Reeves*, 594 U.S. 731 (2021) ("Defense lawyers have 'limited' time and resources, and so must choose from among 'countless' strategic options. Such decisions are particularly difficult because certain tactics carry the risk of 'harm[ing] the defense' by undermining credibility with the jury or distracting from more important issues.") (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).

One concrete example of how capital proceedings harmed Mr. Holder is the fact that his jury had to be "death qualified," which results in selection of a jury that is more prone to convict. It is also a process that has been shown to discriminate against jurors of color, who are

more likely be filtered out due to death qualification. *See, e.g.*, Judith D. Levinson, et al., *Devaluing Death: An Empirical Study of Implicit Racial Bias on Jury-Eligible Citizens in Six Death Penalty States*, 89 N.Y.U. L. REV. 513 (2014). Mr. Holder, a young Black man, was in fact tried by an all-white jury. Moreover, "[t]he perspectives on the criminal justice system of jurors who survive death qualification are systematically different from those of the excluded jurors." *Lockhart v. McCree*, 476 U.S. 162, 188 (1986) (Marshall, J., dissenting). Indeed, "the very process of death qualification—which focuses attention on the death penalty before the trial has even begun—has been found to predispose jurors that survive it to believe that the defendant is guilty." *Id.* (internal citations omitted); *see also* William J. Bowers, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings*, 70 IND. L. J. 1043, 1059–60 (1995).

The district court conducted a capital proceeding, from beginning to end, over which it lacked subject matter jurisdiction. But for the invalid capital charge, Mr. Holder may not have been convicted at all and he certainly could not have been sentenced to death.

**B.    Mr. Holder remains condemned to harsh and excessive conditions of confinement because of the unconstitutionally obtained death sentences.**

*Jones* recognizes that petitioners may continue to avail themselves of the savings clause "for challenges to detention other than collateral attacks on a sentence." 599 U.S. at 478. Such claims include those arguing that a petitioner "is being detained in a place or manner not authorized by the sentence, that he has unlawfully been denied parole or good-time credits, or that an administrative sanction affecting the conditions of his detention is illegal." 599 U.S. at 475.

Mr. Holder alleged in his § 2241 petition that "[t]he conditions of Mr. Holder's detention, including the place and manner, are the consequence of his unlawful death sentences that were rendered by a district court that lacked jurisdiction to preside over any capital proceeding from the outset of the case." ECF No. 1 at 20. These allegations remain true even after the commutation of Mr. Holder's death sentences.

On January 20, 2025, immediately following his inauguration, President Donald J. Trump signed Executive Order 14164. The Executive Order states, in relevant part:

> The Attorney General *shall* evaluate the places of imprisonment and conditions of confinement for each of the 37 murderers whose Federal death sentences were commuted by President Biden, and the Attorney General shall take all lawful and appropriate action to ensure that these offenders are imprisoned in conditions consistent with the monstrosity of their crimes and the threats they pose.[3]

The Attorney General directed the Bureau of Prisons ("BOP") to immediately implement EO 14164.[4]

Prior to President Trump's inauguration, the BOP had conducted an individualized classification review of Mr. Holder and recommended that he be placed in its "Life Connections" program. Life Connections is a therapeutic, faith-based program offered at USP-Terre Haute and certain other prisons, designed to support prisoners' demonstrated commitment to hard work, community service, and positive rehabilitation. After the EO and the Attorney General's proclamation, however, Mr. Holder was designated for placement in USP Florence

---

[3] Restoring the Death Penalty and Protecting Public Safety, Exec. Order No. 14164, 90 Fed. Reg. 8,463 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-30/pdf/2025-02012.pdf.

[4] Off. of the Att'y Gen., *Memorandum for All Department of Justice Employees: Restoring a Measure of Justice to the Families of Victims of Commuted Murderers* (Feb. 5, 2025), https://www.justice.gov/ag/media/1388526/dl?inline.

(ADX), solely due to his status as a death-sentenced prisoner. The placement is subject to litigation. If allowed to be implemented, Mr. Holder will be moved to "the most oppressive conditions in the entire federal system." *Taylor et al. v. Trump et al.*, Case No. 1:25-cv-01161-TJK (D.D.C. April 16, 2025), ECF No. 1, at 6–7. The ADX facility is in a remote, high-desert area of Colorado, and designed to force people to live in near-total isolation. Prisoners spend 22 to 24 hours a day locked alone in small cells built for severe sensory deprivation and to minimize any human contact, including contact with prison staff. To the extent there is any programming at ADX, it occurs over closed-circuit televisions in the cells. There is no group prayer or congregate religious services offered, and no opportunities for religious worship other than occasional one-on-one cell front visits by clergy. Contact with the outside world is severely restricted. Prisoners may have only four 15-minute social phone calls a month. They are only permitted five non-contact visits per month. Such visits are practically never accomplished due to ADX's remote location, often far from loved ones or family. The conditions at ADX are even harsher than those Mr. Holder has been

subjected to on federal death row. *See generally Kadamovas v. Director, Fed. Bureau of Prisons*, Case No. 2:23-cv-22 (S.D. Ind., Jan 12, 2023)).

But for Mr. Holder's death sentence, he would have been classified and housed based on an individualized assessment, which would have put him in the general prison population. Even at a high-security USP, where conditions are still highly restrictive, prisoners in general population are permitted to be outside their cells nearly all day, every day. Regulations and policies permit them to eat communally, engage in recreation outside with others, attend educational and vocational programming in classrooms with others, work prison jobs and earn money, and attend congregate religious services in communion with others. Persons incarcerated in USPs have in-person visits with loved ones that allow for physical contact. They have access to monitored email communications with family and friends via a tablet. They also have the ability to purchase up to 300 minutes (five hours) per month of telephone calls. Unlike at ADX or federal death row, solitary confinement at USPs is also durationally limited: administrative detention for disciplinary reasons rarely lasts more than a few weeks.

Prior to President Trump's Executive Order, the BOP determined that Mr. Holder was *not* appropriate for placement at ADX and would be placed instead in the Life Connections Program at USP-Terre Haute. *Taylor et al v. Trump et al*, ECF No. 1 at 8–9. Mr. Holder has now been referred for transfer to ADX. Part of the BOP's "rationale" for this designation includes the determination that Mr. Holder has a Security Threat Group assignment of "Death Row Inmate." According to BOP, a Security Threat Group is defined as an inmate group, gang, or organization acting in concert to promote violence, escape drug, or terrorist activity."[5] As a result of the commutation of Mr. Holder's death sentences, he has been categorically condemned to indefinite incarceration in harsh conditions.

The district court below was wrong to assume that Mr. Holder's challenge to his death sentence was rendered moot by the commutation. Had Mr. Holder been granted relief, or sentenced to life imprisonment or a term of years, the execution of his sentence would be drastically different. Mr. Holder would not have spent decades facing the prospect

---

[5] Off. of the Inspector Gen., U.S. Dep't of Just., *Audit of the Federal Bureau of Prisons' Management of the National Gang Unit*, at i (2024), https://oig.justice.gov/sites/default/files/reports/24-115.pdf.

of execution and would not now be subject to such harsh and excessive conditions of confinement but for the unconstitutionally obtained death sentences. The commutation of Mr. Holder's death sentences accentuates, rather that negates, the issues raised in this appeal.

## CONCLUSION

For the reasons set forth above, summary affirmance of the district court's judgment is not warranted. This Court has jurisdiction to consider the merits of Mr. Holder's appeal. Mr. Holder respectfully requests that the Court order full briefing and oral argument to resolve this matter.

Respectfully submitted,

LISA G. PETERS
FEDERAL DEFENDER

*/s/ Eliza Meredith*
Eliza Meredith
Federal Public Defender's Office
1401 W. Capitol, Ste. 490
Little Rock, AR 72201
(501) 324-6114

*Counsel for Petitioner-Appellant*

Dated: May 27, 2025

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft 365, Version in 14 point Century Schoolbook.

*/s/ Eliza Meredith*
Eliza Meredith

Dated: May 27, 2025

# CERTIFICATE OF SERVICE

I, Eliza Meredith, hereby certify that, on this date, I electronically filed this memorandum with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Eliza Meredith*
Eliza Meredith

Dated: May 27, 2025